IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| KENT HARMAN, TAMARA HARMAN, JACK HARMAN, SHELLEY HARMAN, BOB HARMAN, and TWILA HARMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>WILSON-DAVIS & CO.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PETITION TO VACATE ARBITRATION AWARD**<br><br><br>Case No. 2:16-cv-00229-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court on plaintiffs' Petition to Vacate an Arbitration Award pursuant to 9 U.S.C. § 10(a) of the Federal Arbitration Act (FAA). (Dkt. No. 2.) The court has carefully considered the memoranda and other materials submitted by the parties, the arguments of counsel, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order DENYING the petition to vacate. The court first determines that it has federal question jurisdiction over the petition to vacate because the underlying claims subject to arbitration raised federal questions. The court then concludes that the plaintiff failed to state grounds sufficient for the court to vacate the arbitration award pursuant to either the public policy exception or the enumerated reasons for vacatur under § 10 of the FAA.

## FACTUAL BACKGROUND

Plaintiffs, the Harman family (Harmans), were Idaho farmers. In 2008, the Harmans sold the family farm and sought investment advice from defendant Wilson-Davis & Co. (Wilson-

Davis). The Harmans claim Wilson-Davis forged financial statements to increase Mr. Bob

Harman's net worth from $1 million to $3.455 million. (Petition to Vacate 3, Dkt. No. 2.) Based

on the allegedly falsified net worth, Wilson-Davis sold Mr. Harman tenant-in-common

investments that Mr. Harman would otherwise have not likely qualified for based on his actual

$1 million net worth. (*Id.*) The Harmans allege they were damaged by making these investments.

The Harmans next claim that Wilson-Davis, in violation of the law, no longer has copies of any

due diligence reports conducted by itself or on its behalf by outside firms regarding these

investments. (*Id.*) Specifically, the Harmans claim that Wilson-Davis spoliated these documents.

(*Id.*)

The parties entered into arbitration and the arbitration panel found no liability against

Wilson-Davis on the tenant-in-common investments. (*Id.*) The Harmans conceded in oral

argument that they raised their spoliation claim to the arbitration panel in connection with this

investment, but now argue that the panel failed to state whether it found liability as to the

spoliation claim. This matter is before the court because the Harmans seek to vacate the panel's

award under the judicially created public policy exception set forth by the United States Supreme

Court in *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987), because the panel

did not award liability on the Harmans' spoliation claim. (Petition to Vacate 4, Dkt. No. 2.)

## DISCUSSION

Wilson-Davis challenges the court's subject matter jurisdiction on the grounds that

federal law claims in the underlying arbitration are insufficient to supply federal question

jurisdiction over a petition to vacate an arbitration award. For this position, Wilson-Davis relied

primarily on the holding in *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26 (2nd Cir. 2000),

which was overruled in August 2016 by *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 389

(2d Cir. 2016). The court asked the parties to provide supplemental briefing on the issue of jurisdiction in light of this development in the law. The court now discusses why it believes it has federal question jurisdiction over the petition to vacate based on the Harmans' underlying federal causes of action that were subject to arbitration.

1. **Jurisdiction Pursuant to 9 U.S.C. § 10 of the Federal Arbitration Act**

Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and by statute. *See Willy v. Coastal Corp.,* 503 U.S. 131, 136-137 (1992). The Supreme Court has repeatedly held that the FAA statute does not create independent federal-question jurisdiction; therefore, "there must be diversity of citizenship or some other independent basis for federal jurisdiction" for a petition to vacate an arbitration award to be brought in federal court. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26 n.32 (1983). Courts had long held to the general rule that "[s]imply raising federal-law claims in the underlying arbitration is insufficient to supply" independent federal question jurisdiction. *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 26 (2d Cir. 2000). In *Vaden v. Discover Bank,* 556 U.S. 49 (2009), this rule was rejected for petitions to compel arbitration filed under § 4 of the FAA, and *Vaden*'s holding has subsequently called the rule into question for petitions to vacate an arbitration award filed under § 10. After the Supreme Court's decision in *Vaden*, there is now a split among the circuits as to whether a court may "look through" a § 10 petition to vacate an arbitration award in order to find federal question jurisdiction based on the underlying federal substantive claims addressed in the arbitration. The Tenth Circuit has not yet addressed the issue.

In *Vaden,* the Supreme Court rejected the long-held general rule that a court is required to find jurisdiction on the face of the petition, holding that "a federal court may *look through* a § 4

petition to compel arbitration to determine whether it is predicated on an action that arises under federal law. *Id.* at 62 (emphasis added). As a basis for this ruling, the Supreme Court emphasized the unique text present in § 4 of the FAA as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement*, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided in such agreement.

9 U.S.C. § 4 (emphasis added).

The Supreme Court relied on the "save for" language in the text of § 4 to reach the conclusion that the "look through" approach applies to § 4 petitions. *Vaden*, 556 U.S. at 49. Specifically, the Supreme Court determined that "[t]he phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it." *Id.* at 62.

By contrast, the text of § 10 of the FAA does not include the "save for" jurisdictional language relied upon in *Vaden*. Instead, § 10 appears to limit a district court's jurisdiction over a petition to vacate an arbitration award by providing that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration" only if certain enumerated grounds for vacatur exist. 9 U.S.C. § 10. The question causing disagreement among the various circuit courts is whether, after *Vaden*, the textual differences between § 4 and § 10—because of the absence of the "save for" provision in § 10—mean that a "look through" jurisdictional approach applies only to petitions to compel arbitration versus petitions to vacate arbitration awards. Thus, in order to find that federal question jurisdiction is present here, the court must analyze the split between the circuit courts to

determine whether under § 10 of the FAA it can "look through" the petition to vacate to the underlying claims giving rise to the arbitration to establish that they arose under federal law.

The Seventh Circuit was the first to analyze whether the "look through" approach applies to a § 10 petition in light of *Vaden*. It determined that it did not. *Magruder v. Fidelity Brokerage Servs. LLC,* 818 F.3d 285 (7th Cir. 2016). The Seventh Circuit reached its conclusion by relying primarily on the fact that the text of § 10 does not have the critical "save for" provision present in the text of § 4, on which the Supreme Court relied in *Vaden. Id.* at 288.

The Third Circuit has followed the Seventh Circuit's reasoning in *Magruder* and refused to apply the "look through" approach to a § 10 petition, holding that "[w]hile there may be some superficial appeal to treating a § 10 motion to vacate an arbitration award in the same manner as a § 4 motion to compel arbitration, a close reading of *Vaden* and the relevant provisions of the FAA undercuts [this] argument." *Goldman v. Citigroup Global Mkts.,* 834 F.3d 242, 252 (3d Cir. 2016). The Third Circuit was persuaded that because § 10 lacks the same "save for" jurisdictional language as § 4 that the reasons provided in *Vaden* for "looking through" a § 4 petition do not apply to a § 10 petition.

The Second Circuit, on the other hand, has disagreed with the holdings in both *Magruder* and *Goldman*, concluding that *Vaden* supports the application of the "look through" approach to § 10 petitions. *Doscher*, 832 F.3d 372. Specifically, the Second Circuit determined that *Vaden* provided "three critical pieces of guidance." *Id.* at 381. First, *Vaden* reiterated the longstanding rule that the FAA's "provisions do not bestow or enlarge subject-matter jurisdiction." Second, *Vaden* "relied heavily upon the text of, and interaction between, the relevant provisions of the Act." *Id.* Third, *Vaden* "identified the practical consequences resulting from the interpretive choices." *Id.* Upon reconciling all three of *Vaden's* guideposts, the Second Circuit concluded that

it was required to "adopt the rule that a federal district court faced with a § 10 petition may 'look through' the petition to the underlying dispute, applying to it the ordinary rules of federal-question jurisdiction and the principles laid out by the majority in *Vaden*." *Id* at 388.

After carefully considering the reasoning of each of the circuit courts that have analyzed this issue, the court concludes that the Second Circuit's reasoning is persuasive and in light of *Vaden* the "look through" approach applies to § 10 of the FAA.  To begin with, the court is persuaded that the Second Circuit correctly identified the key inconsistency between *Vaden*'s "look through" jurisdictional approach for § 4 petitions and the general rule that federal question jurisdiction for all other remedies under the FAA must be found on the face of the petition. *Doscher*, 832 F.3d at 383. *Doscher* notes, first, that *Vaden*'s conclusions that for the § 4 petition at issue there, "the district court possessed jurisdiction only by operation of § 1331" and second, that "the federal question required by § 1331 arose from the underlying dispute, not the face of the petition."  *Id.* As *Doscher* observes, these statements produce a logical inconsistency because *Vaden* simultaneously reiterated that "§ 4 of the FAA does not enlarge federal-court jurisdiction," but then authorized federal courts to "look through" the "face of the petition" at the "underlying substantive dispute" based solely on the textual "save for" language of § 4. *Id.*

In other words, "[t]he inconsistency here is evident: if § 4 of the FAA does not enlarge federal-court jurisdiction, how can a federal court's jurisdiction under the *same* jurisdictional statute *differ* between § 4 and all other remedies under the Act?" *Id.* (emphases in original) (internal punctuation and citations omitted). The court agrees with the Second Circuit that "[t]he necessary result of limiting the look-through approach solely to § 4 petitions is to conclude that the same dispute between the parties [is] sufficient to confer § 1331 jurisdiction for the purposes of § 4 petitions but insufficient to confer § 1331 jurisdiction for the purposes of any of the Act's

other remedies." *Id.* at 384. The court also agrees with the Second Circuit that such a result "is simply not logically possible without construing § 4 to expand federal jurisdiction—a conclusion the Supreme Court has expressly" and repeatedly forbidden the courts to draw. *Id.*

Supported by this reasoning, the court concludes that in order to comply with the Supreme Court's holding that the FAA statute does not bestow jurisdiction, it cannot find that the "look through" approach does not apply to § 10 because it lacks the "save for" language in the text of § 4. Logic requires that the court can avoid this inconsistent result only by finding that the jurisdictional inquiry under § 1331 looks to the underlying substantive dispute with respect to all remedies under the FAA, not just to those under § 4. Applying the "look through" approach to the entire Act complies with the requirement that the FAA does not enlarge jurisdiction, and also follows the third guidepost set forth in *Vaden*, namely, that of avoiding "absurd and illogical discrepancies in jurisdiction among the Act's provisions" as a practical consequence of an interpretive choice. *Doscher*, 832 F.3d at 386. Although *Vaden*'s third guidepost is not necessarily the driving force behind the court's decision to adopt the "look through" jurisdictional approach to § 10 petitions, the court observes that there are many negative practical consequences to an interpretation that permits parties to file motions to compel arbitration in any case where the underlying disputes raise a federal question but precludes them from seeking the same federal court's aid under the Act's other remedial provisions related to the same dispute.[1]

Because the Harmans do not raise a federal question on the face of their § 10 petition to vacate the arbitration award, the court concludes it should look to the underlying substantive

---

[1]For example, the *Doscher* court raised the concern that "if the look-through approach did not apply to a § 10 petition then an intelligent practitioner who wishes to preserve access to federal courts for later disputes over arbitrators, subpoenas, or final awards will attempt to lock in jurisdiction by filing a federal suit first, followed by motions to compel and a stay of proceedings. Construing the Act in a way that encourages the protective filing of federal suits would be the height of absurdity in light of Congress's desire to cabin federal involvement in disputes subject to arbitration." *Id.* at 388 (internal quotations omitted).

disputes to determine whether it has jurisdiction. The Harmans pled that the underlying claims subject to arbitration included causes of action for federal securities violations and control person liability under The Securities Exchange Act of 1934. (Petition to Vacate 1, Dkt. No. 2.) These claims undisputedly arise under federal law. Thus, applying the "look through" approach to their § 10 petition, the court concludes that there is federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## 2. Plaintiffs Failed to Establish Grounds to Vacate the Arbitration Award

Having found it has jurisdiction over the subject matter of the petition, the court now concludes that plaintiffs' petition to vacate the arbitration award must be denied.  An arbitration award may be vacated pursuant to one of the enumerated reasons contained in 9 U.S.C. §10(a), or pursuant to narrow judicially created exceptions. *Lewis v. Circuit City Stores, Inc.,* 500 F.3d 1140, 1151 (10th Cir. 2007). The two judicially created exceptions are (1) manifest disregard of the law, and (2) a violation of public policy. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010); *United Paperworkers Int'l. Union,* 484 U.S. 29 (1987). The Harmans have not alleged a qualifying public policy sufficient to vacate the arbitration award, nor have they alleged one of the enumerated reasons for vacatur under § 10 of the FAA.

### a.  *Vacatur is Improper Under the Public Policy Exception*

"A court's refusal to enforce an arbitrator's award… because it is contrary to public policy is a specific application of the more general doctrine, rooted in common law, that a court may refuse to enforce contracts that violate law or public policy." *United Paperworkers Int'l. Union,* 484 U.S. at 44. Under this application, "a court's refusal to enforce an arbitrator's *interpretation* of [a] contract[ ] is limited" to situations where the contract, as interpreted, violates "some explicit public policy that is well defined and dominant, and [is] ascertained by

reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 43 (emphasis in original). In addition to these requirements, the Supreme Court made clear that the public policy exception does not "sanction a broad judicial power to set aside arbitration awards as against public policy." *Id.*

Here, the Harmans allege that Wilson-Davis falsified and destroyed documents determinative to their potential claim. (Petition to Vacate 3, Dkt. No. 2.) The Harmans argue that this court's failure to vacate the arbitration panel's decision would make the court "the abetter of iniquity" by condoning the falsification and destruction of documents in violation of public policy. *Id.* at 4. As support, the Harmans argue there is a strong public policy that a court's "fundamental powers can never be exerted in behalf of one who has fraudulently, or who by deceit or any unfair means has gained an advantage." *Kitchen v. Rayburn,* 86 U.S. 254, 263 (1873). The Harmans contend that *Kitchen* has never been overturned, is still good law, and should be applied to vacate the arbitration award because failure to do so would assist in or protect fraud in violation of the public policy set forth in *Kitchen.*

The court disagrees that *Kitchen* sets forth a qualifying public policy that gives the court jurisdiction to vacate the arbitration award where the arbitration panel made a factual finding that no fraud was committed. Notwithstanding that the panel did not specifically state whether it found liability as to the Harmans' spoliation claim, the panel found no liability on the tenant-in-common investments, and the Harmans conceded at oral argument that they raised their spoliation claim with the panel in connection with those investments. Thus, the Harmans' proposed public policy violation amounts to a general consideration of supposed public interests in preventing fraud, rather than an explicit public policy that is grounded in legal precedents. It is

therefore invalid under *United Paperworkers Int'l. Union*.[2] Furthermore, the public policy

against protecting fraud as set forth in *Kitchen* has never been applied to vacate an arbitration

award. Because the Supreme Court has provided clear direction that the public policy exception

does not create broad judicial power to set aside an arbitrator's decision, applying *Kitchen* as

urged by the Harmans would violate that principle. For the foregoing reasons, the court

concludes that the Harmans failed to present a dominant, well-defined, and narrowly tailored

public policy grounded in legal precedent that would allow the court to vacate the arbitration

panel's ruling. Thus, the court denies the petition to vacate the arbitration award under the public

policy exception.

b. *Vacatur is Improper for any of the Enumerated Reasons in § 10 of the FAA.*

A party who challenges an arbitration award pursuant to § 10 does not do so "on the

ground the arbitrators made a mistake, but that they violated the agreement to arbitrate, as by

corruption, evident partiality, exceeding their powers, etc.,--conduct to which the parties did not

consent when they included an arbitration clause in their contract." *Edstrom Indus., Inc. v.*

[2] Even if the Harmans' spoliation claim established a violation of a qualifying public policy, there is still a
significant question as to whether a contract is a necessary component to such a public policy claim. In
*United Paperworkers Int'l Union,* the public policy exception was applied to the interpretation of
contracts. The Supreme Court stated that "the court's refusal to enforce an arbitrator's award because it is
contrary to public policy is a specific application of the more general common law doctrine that a court
may refuse to enforce contracts that violate law or public policy." *Id.* at 42. The Tenth Circuit has
similarly held that "in determining whether an arbitration award violated public policy, a court must
assess whether the specific terms contained in the contract violate public policy." *Seymour v. Blue
Cross/Blue Shield,* 988 F.2d 1020, 1024 (10th Cir. 1993) (internal punctuation omitted). Even in *Kitchen,*
on which plaintiffs rely, the court was specifically focused on determining the enforceability of a contract.
*Kitchen,* 86 U.S. at 263. Here, the plaintiffs argue that the panel's findings themselves are against public
policy, rather than that the terms of a contract to be enforced are against public policy. In this case, other
than the agreement to enter into arbitration, there is no contract between the parties. The terms of the
arbitration agreement itself do not constitute a contract that violates public policy. The public policy
exception has yet to be applied to a situation where no objectionable contract exists. Because the public
policy exception is rooted in contract law, the court sees a potential problem in applying the exception
where there is no contract. Nevertheless, the court need not reach the decision of whether a contract is a
necessary component of a public policy claim because the Harmans' proposed public policy is otherwise
invalid under *United Paperworkers Int'l. Union.*

10

*Companion Life Ins. Co.*, 516 F.3d 546, 552 (7th Cir. 2008) (summarizing the enumerated grounds for vacating an arbitration award under § 10 of the FAA). In reviewing an arbitration award, a court is precluded from considering the factual or legal issues that were made the subject of the arbitration. "[T]he standard of review of arbitral awards is among the narrowest known to law" and the court is required to "give extreme deference to the determination of the arbitration panel." *Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1172 (10th Cir. 2006). According to the Supreme Court, "as long as an honest arbitrator is even arguably construing or applying the [law] and acting within the scope of his or her authority, the fact that a court is convinced the arbitrator committed serious error does not suffice to overturn the arbitrator's decision." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000).

Here, the Harmans conceded in oral argument that none of the enumerated grounds for vacatur in § 10 applies to their petition to vacate. The petition does not claim fraud on the part of the arbitrators, evidence of impartiality, corruption, misconduct, that the arbitration panel exceeded its powers, or any other enumerated reason for vacatur set forth in § 10. The Harmans' allegation is essentially that the panel incorrectly found no liability on the tenant-in-common investments about which the issue of spoliation was raised. The court is required to give extreme deference to the panel's determination of the factual or legal issues that were made the subject of the arbitration. Thus, even if the panel erred in failing to directly state the conclusion that it considered and rejected the Harmans' claim of spoliation, it is undisputed that the spoliation claim was raised and that the panel found no liability on the tenant-in-common investments.  The court therefore denies the Harmans' petition for vacatur.

## **CONCLUSION**

For the foregoing reasons, the court DENIES plaintiffs' Petition to Vacate. (Dkt. No. 2.)

The Clerk of Court is directed to close the case.

DATED this 6th day of January, 2017.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge